UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2022 JAN 24 PH 4: 05

UNITED STATES OF AMERICA

v.

JOSEPH ELLICOTT

CASE NO. 6:22-cr- 9-wwB-GJK
18 U.S.C. § 1349
21 U.S.C. § 841(a)(1)

INFORMATION

The United States Attorney charges:

## COUNT ONE
(Conspiracy to Commit Wire Fraud and Honest Services Fraud)

### A. Introduction

1. The defendant, Joseph Ellicott was a resident of the Middle District of Florida who was hired in or about January 2017, by a local governmental agency of Seminole County, Florida (hereinafter "Government Agency") as a Special Projects Manager. Ellicott also purported to operate a business called Uncle Joe's Coins.

2. In or about January 2017, an elected official (referred to herein as the "Public Official") assumed office at the governmental agency.

3. In or about January 2017, a company (referred to herein as the "Contractor Conspirator's Company") entered into a contract to provide goods and service to the Governmental Agency. The owner of the company (referred to herein as the "Contractor Conspirator") signed the contract on behalf of the Contractor Conspirator's Company. The Public Official signed the contract on behalf of the

Governmental Agency and was the official from the Governmental Agency who decided to enter into the contract.

### B. Conspiracy

4. Beginning at a date unknown to the United States Attorney, but beginning at least by in or about January 2017, and continuing thereafter through and including in or about 2019, in the Middle District of Florida, and elsewhere, the defendant,

**JOSEPH ELLICOTT**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the United States Attorney to commit wire fraud and honest services fraud, in violation of 18 U.S.C. §§ 1343 and 1346.

### C. Manner and Means

6. The manner and means of the conspiracy included the following:

   a. It was part of the conspiracy that the Contractor Conspirator and the Contractor Conspirator's company would and did enter into a contract to provide goods and services to the Governmental Agency that was signed by the Public Official on behalf of the Governmental Agency.

   b. It was a further part of the conspiracy that the Contractor Conspirator and the Contractor Conspirator's company would and did submit invoices to the Governmental Agency that included prices for goods and services that were inflated to enrich the Contractor Conspirator and the Contractor Conspirator's company and to defraud the Governmental Agency.

c. It was a further part of the conspiracy that the Contractor Conspirator would and did agree to pay bribes and kickbacks to the Public Official in exchange for receiving favorable official action by the Public Official.

d. It was a further part of the conspiracy that the Public Official would and did provide favorable official action as requested and as opportunities arose, including by employing the Contractor Conspirator and the Contractor Conspirator's company and by causing the Contractor Conspirator and the Contractor Conspirator's company to be paid, including for the inflated invoices that the Contractor Conspirator and the Contractor Conspirator's company submitted.

e. It was a further part of the conspiracy that JOSEPH ELLICOTT would and did agree to serve as the intermediary between the Contractor Conspirator and the Public Official for a bribe and kickback.

f. It was a further part of the conspiracy that the Contractor Conspirator would and did withdraw cash from a bank in the Middle District of Florida.

g. It was a further part of the conspiracy that the Contractor Conspirator would and did contact JOSEPH ELLICOTT by telephone to arrange for JOSPEH ELLICOTT to pick up the cash from the Contractor Conspirator.

h. It was a further part of the conspiracy that the Contractor Conspirator would and did provide the cash to JOSEPH ELLICOTT in the Middle District of Florida.

i. It was a further part of the conspiracy that JOSEPH ELLICOTT would and did deliver the cash to the Public Official in the Middle District of Florida.

j. It was a further part of the conspiracy that the Contractor Conspirator would and did attempt to conceal the fraudulent nature of the transaction by devising a false cover story that the cash that the Contractor Conspirator provided to JOSEPH ELLICOTT was for the purchase of a portion of JOSEPH ELLICOTT's business, Uncle Joe's Coins, when, in truth and in fact, as the Contractor Conspirator and JOSEPH ELLICOTT then and there well knew, the only purpose of the false cover story was to conceal that the cash was a bribe and kickback to the Public Official in exchange for receiving favorable official action.

k. It was a further part of the conspiracy that JOSEPH ELLICOTT would and did deliver the cash to the Public Official in the Middle District of Florida.

l. It was a further part of the conspiracy that the Public Official would and did deposit the cash into bank accounts controlled by him in the Middle District of Florida.

m. It was a further part of the conspiracy that the Public Official, in exchange for receiving that bribe and kickback, would and did use his official position to provide favorable official action on behalf of the Contractor Conspirator as requested and as opportunities arose, including by continuing to employ the Contractor Conspirator and the Contractor Conspirator's company and by causing the Contractor Conspirator and the Contractor Conspirator's company to be paid,

including for the inflated invoices that the Contractor Conspirator and the Contractor Conspirator's company continued to submit.

  n. It was a further part of the conspiracy that the Contractor Conspirator would and did enrich the Contractor Conspirator by secretly obtaining official action by the Public Official for the Contractor Conspirator and the Contractor Conspirator's company through corrupt means.

  o. It was a further part of the conspiracy that the Contractor Conspirator would and did attempt to conceal the fraudulent nature of the transaction through the preparation of a false receipt that falsely represented that the cash that the Contractor Conspirator had paid the Public Official was for the sale of two desks, a credenza, a conference room table with four chairs, an end table, an office cubicle, an office chair, a book case, two whiteboard, and a television, when, in truth and in fact, as the Contractor Conspirator then and there well knew, the payment was a bribe and kickback to the Public Official in exchange for favorable official action.

  p. It was a further part of the conspiracy that the Public Official, the Contractor Conspirator, and JOSEPH ELLICOTT, and other co-conspirators known and unknown to the United State Attorney would and did use interstate wires in furtherance of the conspiracy and scheme and artifice to defraud, including by causing interstate wires to be used to pay the Contractor Conspirator and the Contractor Conspirator's company by use of an American Express credit card and by causing banks to make ACH transactions involving interstate wires.

q.  It was a further part of the conspiracy that the Public Official, the Contractor Conspirator, and JOSEPH ELLICOTT, and other co-conspirators known and unknown to the United State Attorney would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO
### (Distribution of a Controlled Substance)

On or about December 8, 2018, in the Middle District of Florida, the defendant,

**JOSEPH ELLICOTT,**

did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which violation involved a mixture and substance containing a detectable amount of Adderall, an amphetamine and a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

## FORFEITURE

1.  The allegations contained in Counts One and Two are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c).

2. Upon conviction of 18 U.S.C. § 1349 charged in Count One, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. Upon conviction of a violation of 21 U.S.C. § 841(a)(1), the defendant shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a)(1) and (2), any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as a result of such violation, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 18 U.S.C. § 853(p), as incorporated by 18 U.S.C §§ 982(b), and 28 U.S.C. § 2461(c).

ROGER B. HANDBERG
United States Attorney

By: *[signature]*
Jennifer M. Harrington
Assistant United States Attorney

By: *[signature]*
Amanda Daniels
Assistant United States Attorney

By: *[signature: Amanda Daniels for RBH]*
Roger B. Handberg
United States Attorney