AF Approval __JM__                                    Chief Approval __RBH__

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                     CASE NO. 6:22-cr-9-wwB-GJK

JOSEPH ELLICOTT

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, JOSEPH ELLICOTT, and the attorneys for the defendant, Robert Mandell and Joseph Zwick, mutually agree as follows:

**A.    Particularized Terms**

    1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the Information.  Count One charges the defendant with conspiracy to commit wire fraud and honest services fraud, in violation of 18 U.S.C. § 1349.  Count Two charges the defendant with distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

    2.    Maximum Penalties

Count One carries a maximum sentence of 20 years' imprisonment, a fine of not more than $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than 3 years, and a special assessment of $100.

Defendant's Initials _____

Count Two carries a maximum sentence of 20 years' imprisonment, a fine of not more than $5,000,000, a term of supervised release of at least 3 years up to life, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

<u>First:</u>    Two or more persons in some way agreed to try to accomplish a shared and unlawful plan to commit wire fraud and honest services fraud; and

<u>Second:</u>    The defendant knew the unlawful purpose of the plan and willfully joined in it.

The elements of Count Two are:

<u>First:</u>    The defendant knowingly distributed, or possessed with intent to distribute, a controlled substance; and

<u>Second:</u>    The defendant distributed, or intended to distribute, the controlled substance.

Defendant's Initials _____    2

4.   Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.   Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to Seminole County and the relevant Governmental Agency.

7.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.   The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials _____                 3

8.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).   The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this plea agreement, including, but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.   Role in Offense

The United States does not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment, pursuant to USSG

Defendant's Initials _____     4

§3B1.2, regarding the defendant's role in the offense for Count One only.   The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10.   <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the

Defendant's Initials _____                    5

filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

11.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

12.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this

Defendant's Initials _____   6

agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the

Defendant's Initials _____                    7

defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

13.   <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $6,000 in proceeds the

Defendant's Initials _____      8

defendant admits were obtained, as the result of the commission of the offenses to which the defendant is pleading guilty. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offenses, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Fed. R. Crim. P., to help identify, locate, and forfeit substitute assets.

Defendant's Initials _____

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of

Defendant's Initials _P.S._                    10

assets, if it is deemed necessary by the United States.  The defendant agrees that Fed. R. Crim. P. 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing.  In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the plea agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's

Defendant's Initials _____        11

heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.   Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $200, payable to "Clerk, U.S. District

Defendant's Initials _____                    12

Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.   <u>Supervised Release</u>

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.   <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.   <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials _____   13

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.   The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.   The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this plea agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.   The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's

Defendant's Initials _____        15

applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the

Defendant's Initials _____            16

concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _____          17

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty.   The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __18__ day of __January__, 2022.

ROGER B. HANDBERG
United States Attorney

_____
JOSEPH ELLICOTT
Defendant

_____
Amanda Daniels for RBH
Roger B. Handberg
United States Attorney

_____
Robert Mandell
Attorney for Defendant

_____
Jennifer M. Harrington
Assistant United States Attorney

_____
Joseph Zwick
Attorney for Defendant

_____
Amanda Daniels
Assistant United States Attorney

Defendant's Initials _____          19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-

JOSEPH ELLICOTT

## PERSONALIZATION OF ELEMENTS

The elements of Count One are:

First:      Did two or more persons in some way agree to try to
            accomplish a shared and unlawful plan to commit wire
            fraud and honest services fraud?

Second:     Did you know the unlawful purpose of the plan and
            willfully join in it?

The elements of Count Two are:

First:      Did you knowingly distribute, or possess with intent to
            distribute, a controlled substance?

Second:     Did you distribute, or intend to distribute, the controlled
            substance?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-

JOSEPH ELLICOTT

FACTUAL BASIS

Count One

In January 2017, the defendant, Joseph Ellicott, was hired by a government agency in Seminole County (referred to herein as the "Governmental Agency") as a Special Projects Manager. The elected head of the Governmental Agency was a public official and Ellicott's friend (referred to herein as the "Public Official"). From an unknown date, but beginning at least by in or around January 2017, and continuing thereafter through and including in or around 2019, Ellicott, the Public Official, and a contractor with the Governmental Agency (referred to herein as the "Contractor Conspirator") conspired with each other to commit wire fraud and honest services fraud. The purpose of the conspiracy was for the Public Official to secretly use his official position to enrich himself by soliciting and accepting gifts, payments, and others things of value from the Contractor Conspirator and the Contractor Conspirator's company in exchange for favorable official action, and for the Contractor Conspirator to enrich the Contractor Conspirator and the Contractor Conspirator's company by secretly obtaining favorable official action for the

Contractor Conspirator and the Contractor Conspirator's company through corrupt means.

The conspiracy included the following components:

1. The Contractor Conspirator and the Contractor Conspirator's company would and did enter into a contract with the Governmental Agency to provide goods and services to the Governmental Agency.

2. The Contractor Conspirator and the Contractor Conspirator's company submitted invoices to the Governmental Agency that included prices for goods and services that were inflated to enrich the Contractor Conspirator and the Contractor Conspirator's company and to defraud the Governmental Agency.

3. The Public Official agreed to use his official position to provide favorable official action on behalf of the Contractor Conspirator and the Contractor Conspirator's company as requested and as opportunities arose, including by continuing to employ the Contractor Conspirator and the Contractor Conspirator's company and by causing the Contractor Conspirator and the Contractor Conspirator's company to be paid, including for the inflated invoices that the Contractor Conspirator and the Contractor Conspirator's company submitted. In exchange for the Public Official providing such favorable official action, the Contractor Conspirator agreed to pay bribes and kickbacks to The Public Official.

4. The Contractor Conspirator made a bribe and kickback of $6,000 in cash to the Public Official on or about September 25, 2017. Ellicott served as the intermediary for this $6,000 kickback payment, taking the cash from the Contractor Conspirator and delivering the cash to the Public Official.

5. The Contractor Conspirator attempted to conceal the fraudulent nature of the transaction by devising a false cover story that the cash that the Contractor Conspirator provided to Ellicott on or about September 25, 2017 was for the purchase of a portion of Ellicott's business, Uncle Joe's Coins, when, in truth and in fact, the only purpose of the false cover story was to conceal that the cash was a bribe and kickback to the Public Official in exchange for receiving official action.

In or about January 2017, a company entered into a contract with the Governmental Agency to provide goods and services to the Governmental Agency

Defendant's Initials                  22

(referred to herein as the "Contractor Conspirator's company"). The owner of the Contractor Conspirator's company (referred to herein as the "Contractor Conspirator") signed the contract on behalf of the Contractor Conspirator's company. The Public Official signed the contract on behalf of the Governmental Agency and was the official from the Governmental Agency who decided to enter into that contract. The Public Official agreed to pay the Contractor Conspirator and the Contractor Conspirator's company a monthly fee. In addition, the Contractor Conspirator and the Contractor Conspirator's company billed the Governmental Agency for certain goods and services, including printing, shirts, envelopes and business cards.

Many of the bills submitted by the Contractor Conspirator and the Contractor Conspirator's company for goods and services were inflated. Another company (referred to herein as the "Company") would provide goods or services to the Governmental Agency, but the bills for the Company would be provided to the Contractor Conspirator. The Contractor Conspirator's company used those bills to prepare invoices, written on the letterhead of the Contractor Conspirator's company, that were submitted to the Governmental Agency. Those invoices inflated some of the prices of the goods and services that the Company had provided. The Contractor Conspirator and the Contractor Conspirator's company would receive payment from the Governmental Agency and pay the Company the amount that the Company had submitted to the Contractor Conspirator on its invoice. The Contractor Conspirator

Defendant's Initials _____                    23

and the Contractor Conspirator's company would keep the amount by which the Company's invoice had been inflated.

For example, the Company provided the Contractor Conspirator with invoices dated March 20, 2017, and March 23, 2017, totaling approximately $13,900. The Contractor Conspirator used those invoices to create its own invoice for those goods and services, which totaled $19,870. The total amount of inflation of the invoices was over 40% ($5,970/$13,900).

The Contractor Conspirator routinely submitted inflated invoices, including on or about the following dates: May 7, 2017 (over 40% increase), June 12, 2017 (over 35% increase), June 20, 2017 (over 50% increase), July 11, 2017 (over 30% increase), July 31, 2017 (over 30% increase), August 22, 2017 (over 50% increase), and September 23, 2017 (over 50% increase).

In exchange for the Public Official's agreement to provide favorable official action by entering into a contract with the Contractor Conspirator and the Contractor Conspirator's company and paying the Contractor Conspirator and the Contractor Conspirator's company, including for the inflated invoices, the Contractor Conspirator agreed to pay bribes and kickbacks to the Public Official. Ellicott's role in the conspiracy was to serve as the intermediary in the payment of a bribe and kickback on or about September 25, 2017.

On or about that date, at approximately 11:51 a.m., Ellicott attempted to call the Contractor Conspirator. The Contractor Conspirator called back at approximately 12:08 p.m. At approximately 1:21 p.m., the Public Official called the Contractor

Conspirator. After that, the Contractor Conspirator went to a branch of Wells Fargo in the Middle District of Florida where the Contractor Conspirator had personal accounts and withdrew $6,000 in cash from the Contractor Conspirator's personal savings account. This transaction occurred at approximately 1:42 p.m. At approximately 1:58 p.m., the Contractor Conspirator called Ellicott.

Once the Contractor Conspirator had the cash, the Contractor Conspirator met with Ellicott in the Middle District of Florida. Ellicott knew that the Contractor Conspirator was paid by the Governmental Agency and that the Public Official was involved in authorizing the contract for the Contractor Conspirator. The Contractor Conspirator provided Ellicott with the $6,000 in cash, which Ellicott knew was cash that the Contractor Conspirator was paying to the Public Official. To conceal the illegality of the kickback that was being paid, the Contractor Conspirator devised a false cover story that the cash that the Contractor Conspirator provided to Ellicott was for the purchase of a portion of Ellicott's business, Uncle Joe's Coins. Ellicott and the Contractor Conspirator knew that this cover story was false and fraudulent and was only intended on attempting to conceal the fact that the Contractor Conspirator was illegally paying cash to the Public Official in case someone questioned the transaction later. Ellicott knew that the transaction was illegal, in part, due to the fact that it was made in cash, that the money was being given to the Public Official by someone who was being paid by the Governmental Agency on a contract, and that the Contractor Conspirator had devised a false cover story to conceal the true purpose of the transaction.

Defendant's Initials _____         25

At about 3:59 p.m., the Public Official called Ellicott. At about 6:04 p.m., the Public Official called the Contractor Conspirator, and they spoke for over 4 minutes.

Ellicott delivered the $6,000 in cash to the Public Official. On or about September 29, 2017, at approximately 5:57 p.m. at a branch of Fairwinds Bank in the Middle District of Florida, the Public Official deposited $6,020 in cash into his personal accounts. Those proceeds included the $6,000 bribe and kickback that the Contractor Conspirator had paid to the Public Official, using Ellicott as an intermediary. The Contractor Conspirator paid the Public Official those funds in exchange for an official act by the Public Official of entering into the contract with the Contractor Conspirator and the Contractor Conspirator's company and paying the Contractor Conspirator and the Contractor Conspirator's company on the contract with the Governmental Agency, both in the past and on a going forward basis.

In exchange for making that bribe and kickback, the Public Official continued to employ the Contractor Conspirator and the Contractor Conspirator's company and to cause the Contractor Conspirator and the Contractor Conspirator's company to be paid, including for the inflated invoices that the Contractor Conspirator and the Contractor Conspirator's company continued to submit. For example, the Contractor Conspirator and the Contractor Conspirator's company submitted inflated invoices for payment, including on the following dates: October 16, 2017 (over 20% increase) and November 26, 2017 (over 90% increase). Those inflated invoices were paid, including by the Public Official who used one of his American Express cards from the Governmental Agency to pay the October 16, 2017 invoice on or about November 17,

Defendant's Initials ⟨signature⟩          26

2017. The Public Official also used one of his American Express cards from the Governmental Agency to pay the Contractor Conspirator and the Contractor Conspirator's company the monthly fee on or about November 17, 2017. The Public Official's payments to the Contractor Conspirator and the Contractor Conspirator's company, and his authorization for the Contractor Conspirator and the Contractor Conspirator's company to get the contract in the first place and to be paid on the contract, were some of the official acts that the Public Official undertook in exchange for the bribe and kickback from the Contractor Conspirator.

During the course of the conspiracy, the conspirators caused interstate wires to be used, including for the ACH transactions that were used to pay the Contractor Conspirator and the Contractor Conspirator's company (including on or about August 16, 2017, August 25, 2017, September 8, 2017, September 28, 2017, October 11, 2017, October 24, 2017, December 19, 2017, January 3, 2018, February 13, 2018, March 6, 2018, and April 10, 2018) and the American Express transactions on November 17, 2017. Those wires were processed using servers or instrumentalities outside of Florida, which caused wires that originated in the Middle District of Florida to travel in interstate commerce.

After a subpoena was served on the Governmental Agency regarding the federal investigation of the Public Official in or about April 2019, the Contractor Conspirator came up with another cover story for the Contractor Conspirator's $6,000 payment to the Public Official. This cover story was that the Contractor Conspirator had paid the Public Official $6,000 for some leftover furniture from the Public Official's 2016

campaign.  As part of the Contractor Conspirator's efforts to conceal the bribe and kickback that had been paid in September 2017, the Contractor Conspirator provided the Public Official with a fake receipt dated September 25, 2017, that claimed to reflect the sale of two desks, a credenza, a conference room table with four chairs, an end table, an office cubicle, an office chair, a book case, two whiteboard, and a television for $6,000.  The Contractor Conspirator knew that this document was false and fraudulent and was only intended on attempting to conceal the fact that the Contractor Conspirator had illegally paid $6,000 in cash to the Public Official in case an investigator from the federal investigation questioned the transaction.

### Count Two

Adderall is an amphetamine and a Schedule II controlled substance.  For at least two years, Ellicott illegally sold Adderall to others.

For example, one of Ellicott's customers purchased hundreds of pills from him (referred to herein as the "Purchaser").  Over the course of more than two years, the Purchaser paid Ellicott over $5,000 for those controlled substances.  Those payments included payments by Venmo and check.  For the Venmo payments, the Purchaser would use the Purchaser's Venmo account to pay Ellicott's Venmo account and would include a note with the transaction intended to conceal that the payment was for illegal controlled substance distribution by Ellicott.

For the checks, Ellicott and the Purchaser attempted to conceal the true nature of the transaction by having the Purchaser write checks to Ellicott's coin business, Uncle Joe's Coins.  From January 2017 to January 2019, the Purchaser wrote over 25

Defendant's Initials _____          28

checks, totaling over $4,000, to Uncle Joe's Coins to pay for controlled substances that were sold to the Purchaser by Ellicott. None of those checks were for any purchase of coins or anything else sold by Uncle Joe's Coins. Instead, the checks were for amounts, usually in round numbers, that reflected the number of dosage units sold by Ellicott.

One such transaction occurred on or about December 8, 2018. On December 7, 2018, the Purchaser texted Ellicott. After that, Ellicott and the Purchaser texted an additional nine times on that date, spanning from around 2:00 p.m. to 10:30 p.m. On or about December 8, 2018, Ellicott met the Purchaser and delivered the Adderral in the Middle District of Florida. On or about that same day, the Purchaser paid Ellicott $95 for the Adderral using Venmo. To conceal the true nature of the transaction, the Purchaser included a message of "2 hour full body massage" with the Purchaser's Venmo payment, which was a false representation intended to disguise the fact that the payment was being made for the purchase of a controlled substance from Ellicott.